IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENWOOD DIVISION

| | |
|---|---|
| Anthony Oliver, ) | |
| ) | Civil Action No. 8:10cv01191-JMC-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Gleamns Human Resource ) | |
| Commission Inc., ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on the defendant's motion for summary judgment (doc. 19). In his complaint, the plaintiff alleges that the defendant, his current employer, denied him a promotion to an accounting clerk/purchasing position in April 2009 based upon his race, sex, and age. The plaintiff instituted this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act of 1967 ("ADEA").

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTS PRESENTED**

The plaintiff, who is a 53-year-old black male (pl. aff. ¶ 1), is currently employed with the defendant GLEAMNS as a receptionist and has held this position since 2003 (pl. dep. 15, 26). The defendant is a public, nonprofit organization that provides social services for eligible clients and operates in Greenwood, Laurens, Edgefield, Abbeville, McCormick, Newberry, Saluda, Richland, Lexington, and Fairfield Counties. Although the

defendant runs a number of programs, approximately 70% of its budget involves running the Head Start federally funded programs in the counties mentioned above.

The plaintiff began his employment with the defendant in 1984 as a custodian (pl. dep. at 9-10, 13). He was promoted to the receptionist position at the Greenwood headquarters in 2003 by J. D. Patton, the defendant's Chief Executive Officer (*id.* at 14). After his promotion, the plaintiff reported to Ron Davis, the defendant's Chief Operating Officer, and Mr. Davis is still his supervisor today (*id.* at 14-15). The plaintiff did not apply for the receptionist position but was offered the position by Dr. Patton and Mr. Davis (*id.* at 15). Mr. Davis and Dr. Patton are both African-American males over the age of 65 (*id.* at 63; Taylor aff. ¶ 2).

The plaintiff's duties as a receptionist include answering the phone, delivering faxes, and other clerical duties (pl. dep. at 6). The plaintiff is also responsible for generating folders for the checks that the purchasing clerks generate in the finance department (pl. dep. at 16-17). He types the labels, prints the labels, and places them on the folders (*id.* at 52-53). On his 2008 and 2009 performance evaluations, the plaintiff was informed that he needed to improve his work on the tab folders (pl. dep., ex. 10, 11). The plaintiff acknowledges that there was a backlog of folders that he was supposed to be working on for the finance department (pl. dep. at 51).

The defendant's finance department consists of three sections: budgeting, purchasing, and accounting (Taylor aff. ¶ 5). The plaintiff testified that he applied for an accounting clerk position approximately 16 years ago and was told that he did not have the appropriate education to fill the position (pl. dep. at 18-19). According to the plaintiff, Sandra Taylor (Chief Financial Officer) informed him that he did not have a degree and therefore did not meet the qualifications for the position (*id.* at 20). Ms. Taylor denies ever informing the plaintiff that he had to have a degree in order to be qualified for an accounting clerk position (Taylor dep. at 11). The plaintiff admits that Ms. Taylor never promised him a job in the accounting department if he got an accounting degree (pl. dep. at 25). The plaintiff does not allege any discrimination with respect to the accounting clerk position in

1994.  The plaintiff received an Associate's Degree in Business (with electives in accounting) from Piedmont Technical College in July 2002 (pl. dep., ex. 3).

A vacancy occurred in the purchasing department when an employee's husband suffered a stroke and she had to leave employment suddenly (pl. dep. at 36; Taylor dep. at 5-6).  Because the employee was unable to provide the defendant notice prior to leaving, Ms. Taylor contacted Staff Source, a temporary staffing company, and asked them to send her an accounting clerk candidate (Taylor dep. at 6-7).  Staff Source sent two candidates, and Roxie Dilleshaw, a white female[1], was awarded the position on a temporary basis (*id.* at 7).

On February 27, 2009, the defendant posted internally, in accordance with its policies and procedures, the vacant accounting clerk position in the purchasing department (pl. dep., ex. 4).  The job announcement stated the following:

> To assist in processing a variety of requisitions to obtain supplies, materials, equipment and services for the agency; to input information in computer system and maintain files in the accounting department.  AA Degree in Business or Accounting or a minimum of 1-2 years experience working in an accounting or purchasing environment which would provide the level of knowledge, skill and ability required.  Working knowledge of accounting software programs and Microsoft Office (Word, Excel) required.

(Pl. resp. m.s.j., ex. 2).

The plaintiff and Ms. Dilleshaw were the only two employees who placed bids for promotion to the vacant accounting clerk/purchasing position (pl. dep., ex. 6; Dilleshaw dep. at 13).  The plaintiff acknowledges that at the time he applied for the position in February 2009, he had an Associate's Degree in Business, but he did not have any accounting or business experience (pl. dep. at 30).  While the plaintiff has experience

---

[1] Ms. Dilleshaw is described by the plaintiff as a "substantially younger white female" (pl. resp. m.s.j. at 3, 11), but neither the plaintiff nor the defendant have stated her exact age.

working in Microsoft Word, he does not have any experience working in Excel and has not worked with any accounting-type software since he was in school back in the late 1990s and early 2000s (*id.*). In reviewing the job description (pl. dep., ex. 5), the plaintiff testified that he has never balanced purchase orders monthly versus expense codes and has not maintained budget balances on spreadsheets since he was in school (pl. dep. at 31-32). When asked in his deposition if he was qualified to perform the job functions of the position, the plaintiff stated "I could learn to do it. I didn't say I was qualified, but I can learn to do it" (*id.* at 34).

Ms. Dilleshaw interviewed for the position in March, but the plaintiff was not able to interview for the position until April 14, 2009, because he was out on sick leave (pl. dep. at 41-42). The interview with the plaintiff involved a series of questions, and the interview was conducted by Ms. Taylor, Mr. Davis, and Dr. Patton (*id.* at 42-44). According to Ms. Taylor, the plaintiff displayed an antagonistic and flippant attitude during the interview process (Taylor dep. at 19).

The candidates were asked the same questions, and the interviewers all scored each candidate, and the candidate with the higher score was Ms. Dilleshaw (Taylor dep. at 19-21; Taylor aff., ex. 1). According to Ms. Taylor, Ms. Dilleshaw interviewed better than the plaintiff, scored higher during the interview, and her experience using similar accounting software, prior to beginning her work with the defendant through Staff Source, made her the better qualified candidate for the position (Taylor dep. at 19-22, 25-26; Taylor aff. ¶ 4). Ms. Dilleshaw scored 61 points higher than the plaintiff during the interview (Taylor aff., ex. 1). During her previous employment, Ms. Dilleshaw had worked with SAP and AS400 software similar to Blackbaud, the purchasing software used by the defendant (Taylor dep. at 15-17, ex. 2; Dilleshaw dep. at 8). Ms. Dilleshaw had also been performing the job duties for the past three months, and Ms. Taylor testified that she had demonstrated she could perform the essential job functions well (pl. dep. at 38; Taylor dep. at 25-26). Ms. Dilleshaw is pursuing an Associate's Degree in Accounting and was already pursuing this

degree prior to the time she began her temporary work with the defendant (Dilleshaw dep. at 17).

The plaintiff points out that the defendant stated in its Equal Employment Opportunity Commission ("EEOC") position statement that he "failed to provide an adequate response" when asked why he wanted to be a clerk in the accounting department (pl. resp. m.s.j., ex. 3 at p. 3).  However, Ms. Taylor testified in her deposition that the plaintiff's response that he "wanted to work in accounting" was not an inadequate response (Taylor dep. at 32).  Further, Ms. Taylor stated in her deposition that no one asked the plaintiff during the interview if he could use the software that the defendant used in its accounting department (*id.* at 18-19).  When asked what skills the plaintiff lacked for working in the accounting department, Ms. Taylor identified fund accounting, but admitted that she never asked the plaintiff if he knew the principles of fund accounting *(id.* at 22-23).  She assumed the plaintiff would not know it because fund accounting was not taught in a two year accounting degree (*id.*).  However, Ms. Dilleshaw testified that fund accounting is taught as an elective in a two year degree program (Dilleshaw dep. at 18).  Further, in the EEOC position statement, the defendant stated that the plaintiff "failed a basic accounting test" when asked to itemize and formulate simple inventory and supply costs in a spreadsheet. The plaintiff did the calculations by hand and typed in the numbers and totals manually and did not use an Excel spreadsheet or similar program to formulate his calculations (pl. resp. m.s.j., ex. 3 at p. 3).  According to Ms. Taylor, the plaintiff's answers were the same as Ms. Dilleshaw's, but it appeared that Ms. Dilleshaw knew more than the plaintiff "by the way it was structured" (Taylor dep. at 33).  Ms. Taylor further testified that the test did not play a part in the decision to hire Ms. Dilleshaw rather than the plaintiff.  Ms. Taylor testified that she did not see the test answers until after the interview scores had been calculated (*id.* at 34-35).

Ms. Dilleshaw was hired for the accounting clerk/purchasing position (pl. dep. at 35).  The decision to award the position to Ms. Dilleshaw was made by Ms. Taylor (a

65-year-old white female), Mr. Davis (a 68-year-old African-American male), and Dr. Patton (a 68-year-old African-American male) (Taylor aff. ¶¶ 1-2).

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the

6

existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

The parties agree (def. m.s.j. at 10; pl. resp. m.s.j. at 10-11) that the plaintiff's allegations must be analyzed under the *McDonnell-Douglas v. Green* burden-shifting framework. 411 U.S. 792 (1973). "To prevail on a disparate treatment claim for failure to promote, [the plaintiff] must establish that [he] was treated less favorably because of [his] race [or sex]." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005) (citations omitted). Under the burden-shifting method of proof of *McDonnell Douglas*, if the plaintiff can establish a *prima facie* case, the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions against the plaintiff. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981) (this is a burden of production, not persuasion). If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000).

To prove a *prima facie* case of discriminatory failure to promote, the plaintiff must prove: (1) he is a member of a protected class; (2) he applied for the position in question; (3) he was qualified for that position; and (4) the defendant rejected his application under circumstances that give rise to an inference of unlawful discrimination.

7

*Anderson*, 406 F.3d at 268. The *prima facie* case standard in a failure to promote context under Title VII is the same under the ADEA. *See Martin v. Alumax of South Carolina, Inc.*, 380 F.Supp.2d 723, 732 (D.S.C. 2005) (citing *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998)).

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's *prima facie* case, does not compel judgment for the plaintiff, because "[i]t is not enough ... to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* at 146-47 (*quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993)) (emphasis in original). However, the Court also stated that, under the appropriate circumstances, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48. Pretext analysis does not convert Title VII into a vehicle for challenging unfair – but nondiscriminatory – employment decisions. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir. 1989). Conclusory allegations, without more, are insufficient to preclude the granting of the defendant's summary judgment motion. *Ross*, 759 F.2d at 365. "A plaintiff alleging a failure to promote can prove pretext by showing that he was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 259 (4th Cir. 2006). Regardless of the framework under which a plaintiff pursues a discrimination claim, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 153 (2000).

The defendant does not dispute that the plaintiff can prove the first three elements of a *prima facie* case, but argues that he cannot establish the fourth. Viewing the evidence in a light most favorable to the plaintiff, this court finds that the plaintiff has not shown that the defendant failed to promote him under circumstances that give rise to an inference of unlawful discrimination. Furthermore, this court finds that even if the plaintiff could satisfy a *prima facie* case, he cannot and has not shown that the defendant's stated reason for promoting Ms. Dilleshaw rather than him to the accounting clerk position was pretext for race, sex, or age discrimination.

As argued by the defendant, the questions of fact identified by the plaintiff (pl. resp. m.s.j. at 7-9, 18-19) are not material to a finding of unlawful discrimination. For instance, assuming Ms. Taylor told the plaintiff in 2000 that he needed to get a degree before he would be qualified for the accounting clerk position is immaterial to the ultimate question of whether he was denied a promotion for unlawful discriminatory reasons in 2009. The evidence is undisputed that the plaintiff did not have an Associate's Degree in 2000. Further, the plaintiff has testified that he did not have any accounting experience or otherwise meet the minimum qualifications for an accounting clerk position without his degree (pl. dep. at 34). Furthermore, the plaintiff admits that Ms. Taylor did not promise him a position in the accounting department if he earned his degree (*id.* at 25). In addition, it is not in dispute that the plaintiff met the minimum qualifications for the position in 2009.

The plaintiff also states the following as a material issue of disputed fact: "Despite Defendant now stating that experience is more important than a degree, is Ms. Dilleshaw working towards that same degree because it will help her do her job more effectively" (pl. resp. m.s.j. at 9). The evidence is uncontroverted that Ms. Dilleshaw was already pursuing a degree prior to being sent by Staff Source to interview for the temporary position with the defendant (Dilleshaw dep. at 17). The plaintiff further argues that "if this were true that Ms. Taylor said these things [that he needed a degree to be qualified for an accounting clerk position] then Ms. Dilleshaw, who Defendant hired, would not have been

9

considered qualified for the subject position because she had no accounting degree" (pl. sur-reply at 2). However, as discussed above, assuming that Ms. Taylor made the statement, the evidence is clear that at the time the statement was made the plaintiff had neither a degree nor any experience. According to the defendant's job announcement in 2009 for the position at issue in this case, the qualifications were either an Associates' Degree in Business or Accounting or "a minimum of 1-2 years experience working in an accounting or purchasing environment which would provide the level of knowledge, skill and ability required" (pl. resp. m.s.j., ex. 2). The evidence shows that Ms. Dilleshaw had used the purchasing/accounting software similar to that used by the defendant in her previous job and had shown that she could perform the skills required by the job while filling the temporary position.

The defendant argues that the plaintiff was not the best qualified candidate for the position, noting that while the plaintiff obtained an Associate's Degree in 2002, he had not used his degree and had no accounting experience and no experience in Excel or working on any similar accounting software systems. Furthermore, the evidence shows that when rated during the interview by three decision makers, two of whom are African-American males who are older than the plaintiff, Ms. Dilleshaw scored some 61 points higher than the plaintiff. "The fact that the decisionmakers were of the same protected class suggests no discriminatory motivation." *Demesme v. Montgomery County Gov.*, 63 F.Supp.2d 678, 683 (citing *Love v. Alamance Co. Bd. of Educ.*, 757 F.2d 1504, 1509 (4th Cir.1985)).

The plaintiff argues as follows:

[H]aving two black decision-makers certainly suggest that the decision was not made due to hatred or disdain for black, male workers. But with the strong evidence of pretext involved in this decision, the pattern and process established by Defendant over the past 13 years to give these positions predominantly to white females, and the fact that only white females have these current positions, certainly allows a reasonable jury to conclude that Defendant believed white females were better suited for these positions, regardless of education or skill—which would be discriminatory.

10

(Pl. resp. m.s.j. at 21). In his affidavit, the plaintiff states, "[A]s had been Ms. Taylor's practice over the last 13 years, Defendant temporarily hired a substantially younger white female into the open position" (pl. aff. ¶ 4). However, the plaintiff has not pled a pattern or practice case, and, even if he had, he offers no evidence to support such a claim. He offers no evidence about how these other accounting clerks were hired, what their qualifications were for the position, who the other candidates for the job openings were, or any other evidence to support his allegation. The only promotion in question before this court is the accounting clerk position in April 2009.

The plaintiff also tries to create a question of fact by citing to the defendant's position statement that was provided to the EEOC in July 2009. However, the defendant has not taken inconsistent positions with the EEOC and in this litigation. Rather, in accordance with the disclaimer set forth in the position statement (*see* pl. resp. m.s.j., ex. 3 at p. 1), the defendant has expanded and provided a more thorough explanation of its decision during this litigation. As the Honorable Joseph F. Anderson, Jr., United States District Judge, stated recently in *Hunnicutt v. SC Dept. of Revenue*, "The Fourth Circuit has held that inconsistent explanations of employment actions are probative of pretext, but that different or varying explanations that are not materially inconsistent are not." C.A. No. 3:08-2589-JFA, 2010 WL 1344352, at *8 (D.S.C. March 31, 2010) (slip copy) (citing *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 646-647 (4th Cir.2002), and *Baldwin v. England*, 137 Fed. App'x 561, 564-65 (4th Cir.2005) (unpublished) ("the Navy's proffer of consistent, though varying, reasons that Baldwin could not be promoted fails to support an allegation that any of those reasons are false, much less that all of them are a pretext for discrimination")). A review of the position statement and summary judgment brief filed in this case illustrates that the defendant has been consistent from the outset with respect to why Ms. Dilleshaw was selected for the vacant accounting clerk/purchasing position — the defendant felt Ms. Dilleshaw was the best qualified candidate for the position. In the position statement, the defendant discusses the

interview process, the fact that the plaintiff had no prior accounting experience, exhibited no working knowledge or experience with Excel spreadsheets, and although he received an Associate's Degree in 2002, he had done nothing to develop or use that degree since 2002 (pl. resp. m.s.j., ex. 3 at p. 3).

The plaintiff makes much of the fact that the defendant did not ask him about his accounting and software skills in the interview. However, the plaintiff had been working for the defendant for the past 26 years, and clearly Ms. Taylor, Mr. Davis, and Dr. Patton were all familiar with his skills and abilities. Mr. Davis had been the plaintiff's direct supervisor since 2003. They were aware that the plaintiff had completed his degree in 2002 and that he had been in the receptionist position since 2003. They were also aware that the plaintiff was behind in his clerical duties performed in assisting the finance department (pl. dep. at 52-53, ex. 10, 11).

Furthermore, the defendant has presented evidence that cuts against a finding of pretext. First of all, from an age standpoint, the individuals who made the decision to promote Ms. Dilleshaw to the accounting clerk/purchasing position are all over the age of 65 (Taylor aff. ¶¶ 1, 2; pl. dep. at 63). Additionally, four of the six current accounting clerks are over the age of 50 (Taylor aff. ¶ 5). Moreover, from a race and gender standpoint, two (Dr. Patton and Mr. Davis) of the three decisionmakers are African-American males (pl. dep. at 42; Taylor aff. ¶ 1). Although the current accounting clerks are all female, this evidence is irrelevant to the actual promotion in question. As discussed above, the plaintiff fails to offer any evidence that any male employees ever applied for any of these positions in the accounting department. The defendant has not filled a vacancy in the accounting department, other than the one at issue in this case, since 2005 (Taylor dep. at 10). Also, the Purchasing Manager (the individual who directly supervises this accounting clerk/purchasing position at issue here) is an African-American male (Taylor aff. ¶ 5). Further, the Budgeting Manager is an African-American female (pl. dep. at 60-61). Both

employees worked as clerks in the accounting department before being promoted, and Ms. Taylor was on the selection committee for both of these promotions (Taylor aff. ¶ 5).

Accordingly, this court finds that the plaintiff has failed to show evidence that the defendant failed to promote him under circumstances that give rise to an inference of unlawful discrimination. Furthermore, this court finds that even if the plaintiff could satisfy a *prima facie* case, he cannot and has not shown that the defendant's stated reason for promoting Ms. Dilleshaw rather than him to the accounting clerk position was pretext for race, sex, or age discrimination.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendant's motion for summary judgment (doc. 19) be granted.

May 31, 2011                                              s/Kevin F. McDonald
Greenville, South Carolina                         United States Magistrate Judge